UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

GLORIA MOORE,

                  Plaintiff,

– against –

MONTEFIORE MEDICAL CENTER,

                  Defendant.

**OPINION & ORDER**

22-cv-10242 (ER)

RAMOS, D.J.:

    Gloria Moore, proceeding *pro se*, commenced this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), alleging religious discrimination against her former employer Montefiore Medical Center ("Montefiore") because she was fired for seeking an exemption to a coronavirus (COVID-19) vaccine requirement. Doc. 1. Montefiore brings the instant motion to dismiss the complaint, with prejudice, for failure to state a claim. Doc. 22. For the reasons set forth below, the motion is granted.

## I.   BACKGROUND

### A.  Factual Background[1]

*1.  COVID-19 & New York State Department of Health's ("NYSDOH") Response*

    On March 1, 2020, New York State Governor Andrew Cuomo confirmed that the first case of COVID-19 was discovered in New York.[2] On March 11, 2020, the World

---

[1] The facts recited herein are taken from the complaint, Doc. 1, which the Court accepts as true on this motion. Certain allegations are taken from Moore's opposition to the instant motion, Doc. 27, and will be considered herein. *See Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 247 (S.D.N.Y. 1998) ("[P]olicy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where . . . those allegations are consistent with the complaint."). Finally, the Court considers documents in the record that are "integral to" or incorporated by reference by the complaint. Doc. 24-1; Doc. 24-2; Doc. 24-3; *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) ("[A] document is 'integral' when the complaint 'relies heavily upon [the document's] terms and effect.'") (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))).

[2] *See Governor Cuomo Issues Statement Regarding Novel Coronavirus in New York*, N.Y. STATE, (Mar. 1, 2020), https://www.governor.ny.gov/news/governor-cuomo-issues-statement-regarding-novel-coronavirus-new-york.

Health Organization declared COVID-19 to be a global pandemic.[3]  On August 23, 2021, the U.S. Food and Drug Administration approved the first COVID-19 vaccine (the "Vaccine").[4]

On August 26, 2021, NYSDOH issued an emergency rule directing hospitals, nursing homes, hospices, adult care facilities, and other healthcare entities to require all medically eligible "personnel"[5] employed by them to be fully vaccinated against COVID-19 (the "DOH Mandate").  10 N.Y.C.R.R. § 2.61(c) (2021).  The DOH Mandate provided for medical exemptions, but no religious or other exemptions.  § 2.61(d).  The DOH Mandate permitted—but did not require—hospitals and healthcare entities to reassign employees who qualified as "personnel" if they had religious objections to receiving the Vaccine.[6]  Failure to comply with the DOH Mandate subjected a hospital to the possible revocation of its operating license.  N.Y. PUB. HEALTH LAW § 2806(1) (McKinney 2010).[7]

---

[3] *See WHO Director-General's Opening Remarks at the Media Briefing on COVID-19 – 11 March 2020*, WORLD HEALTH ORG. (Mar. 11, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[4] *See FDA Approves First COVID-19 Vaccine*, U.S. FOOD & DRUG ADMIN. (Aug. 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine.

[5] "Personnel" are defined as individuals employed or affiliated with a covered healthcare entity who, if infected with COVID-19, "could potentially expose other covered personnel, patients or residents to the disease."  § 2.61(a)(2).

[6] "'Section 2.61, on its face, does not bar an employer from providing an employee with a reasonable accommodation *that removes the individual from the scope of the Rule*.'  In other words, it may be *possible* under the Rule for an employer to *accommodate*—not *exempt*—employees with religious objections, by employing them in a manner that removes them from the Rule's definition of 'personnel.'"  *We the Patriots USA, Inc. v. Hochul* ("*We the Patriots II*"), 17 F.4th 368, 370 (2d Cir. 2021) (*per curiam*) (emphasis in original) (quoting *We the Patriots USA, Inc. v. Hochul* ("*We the Patriots I*"), 17 F.4th 266, 292 (2d Cir. 2021) (*per curiam*), *cert. denied*, 142 S. Ct. 2569 (2022)).

[7] Beginning on May 24, 2023, NYSDOH stopped penalizing employers who, from then on, failed to require personnel to be vaccinated in accordance with the DOH Mandate.  *See* Letter from Eugene P. Heslin, MD, NYSDOH First Deputy Commissioner and Chief Medical Officer, to New York Chief Executive Officers and Healthcare Facilities (May 24, 2023), https://coronavirus.health.ny.gov/system/files/documents/2023/05/healthcare-worker-vaccine-mandate-guidance.pdf.

*2. Moore's Request for a Religious Exemption from the DOH Mandate*

Moore is a Christian woman who worked for Montefiore for twenty years as a nurse's aide and then customer service receptionist.[8]  Doc. 27 at 1.  During the pandemic, Moore never contracted COVID-19 and consistently implemented safety and protection measures that aligned with (and sometimes exceeded) Montefiore's guidelines, such as wearing a mask and advocating for the installation of barriers to promote social distancing.  *Id.* at 3.  Montefiore is a medical center and hospital system located in the Bronx.

In September 2021, in response to a New York State court issuing an injunction preventing the enforcement of the DOH Mandate for failure to provide a religious exemption, Montefiore provided its employees with a Religious Exemption Request Form that they could submit if they had religious objections to receiving the Vaccine.[9]  *Id.* at 1–2; Doc. 23 at 8–9.  On September 25, 2021, Moore submitted the form, asserting that her religious beliefs prohibited her from receiving the Vaccine.  Doc. 24-1.  Specifically, Moore identified the Vaccine as a "foreign toxin[] with harmful or unknown effects," the receipt of which "violates fundamental aspect[s] of [her] faith."  *Id.* at 3.  In her Religious Exemption Request Form, Moore quotes several Bible verses, but she does not explicitly identify herself as a Christian.  *Id.*  The next day, Moore alleges that she was notified by FedEx that Montefiore had not received her Religious Exemption Request Form.  Doc. 27 at 2.

---

[8] Moore does not describe her duties in either role.  *See generally* Doc. 1; Doc. 27.  Montefiore represents that as a receptionist Moore was "responsible for greeting, screening and providing information to Montefiore's patients' families and visitors."  Doc. 23 at 10.

[9] Montefiore alleges that it allowed employees to submit a Religious Exemption Request Form in response to the Court's decision in *Dr. A. v. Hochul*, 567 F. Supp. 3d 362 (N.D.N.Y. 2021).  Doc. 23 at 8–9.  There, the Court enjoined New York from enforcing § 2.61 because it prohibited employers from exempting individuals with religious objections to the Vaccine, which the court viewed as obstructive to Title VII under the Supremacy Clause.  *Dr. A.*, 567 F. Supp. 3d at 372–73.  This decision was reversed on November 4, 2021, in *We the Patriots I*, 17 F.4th at 296.

Moore also alleges that at some point between September 27, 2021, and October 11, 2021, she received a letter (which she no longer has in her possession) providing that Montefiore never received her exemption request.[10]  *Id.*  On October 11, 2021, Moore resubmitted her Religious Exemption Request Form.  *Id.*  On October 22, 2021, Moore received a letter denying her exemption request and retroactively terminating her employment as of October 16, 2021.[11]  *Id.*  At no point prior to her termination did Montefiore mention the DOH Mandate to Moore.  *Id.* at 3–4.

Meanwhile, Moore alleges that one of her colleagues, who tested positive for COVID-19, continued working notwithstanding the virus.  *Id.* at 2.  Additionally, Moore claims that another employee (a manager at the Fordham Plaza Montefiore location) continues to be employed by Montefiore even though he never received the Vaccine and never had a medical exemption.  *Id.* at 3.  Moore does not identify the religious affiliations or job duties of either of these colleagues, nor the title or position of the individual who tested positive.  *See id.* at 2–3.

### B. Procedural History

On September 29, 2022, prior to commencing this action, Moore received a Notice of Right to Sue Montefiore from the U.S. Equal Employment Opportunity Commission.  Doc. 1 at 8.  On December 2, 2022, Moore filed the instant complaint alleging that she was terminated after she requested a religious exemption from the Vaccine requirement and asserting claims for religious discrimination and religious

---

[10] Montefiore submits an undated letter, Doc. 24-2, that it alleges was sent to Moore. Doc. 24 at ¶ 3. The letter acknowledged receipt of a Religious Exemption Request Form but denied the request because she "failed to demonstrate [her] request was based upon a sincerely held religious belief, practice or observance." Doc. 24-2 at 2. The letter further provides that Moore had until October 15, 2021, to submit additional relevant information or be terminated. *Id.* If, after additional information was submitted, Montefiore decided not to grant an exemption, she would be required to receive the Vaccine by October 29, 2021, or be terminated. *Id.* The Court considers this letter as incorporated by reference in the complaint because Moore alleges that she requested a religious exemption and was denied. Doc. 1 at 5.

[11] The Court notes that in her complaint, Moore alleges she was terminated on October 12, 2021. Doc. 1 at 5. However, in opposition to the instant motion, Moore claims she was terminated on October 16, 2021. Doc. 27 at 2. The latter comports with a letter submitted by Montefiore, which it alleges was sent to Moore. Doc. 24-3 at 2.

retaliation pursuant to Title VII. *Id.* at 5. On February 10, 2023, the Court referred the case for mediation. Doc. 3. On March 9, 2023, Montefiore filed a motion to dismiss, Doc. 7, which the Court dismissed without prejudice pending the completion of mediation, Doc. 11. On June 15, 2023, mediation was held but was unsuccessful. Doc. 17 at 1.

On June 27, 2023, Montefiore requested a pre-motion conference prior to submitting its motion to dismiss. Doc. 17. The Court granted Montefiore leave to file the motion, which was filed on July 26, 2023, Doc. 22. In its motion, Montefiore argues that the complaint failed to state a Title VII claim because it had no discretion to grant a religious exemption to an employee who qualified as "personnel" under the DOH Mandate and should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 23.

## II.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). If the plaintiff

5

has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570; *accord Iqbal,* 556 U.S. at 680.

The question in a Rule 12 motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits'" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted).

### B. *Pro Se* Plaintiff

The Court holds submissions by *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09-cv-6621 (SAS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest,'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Lab.*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

6

### III. DISCUSSION

#### A. Title VII Religious Discrimination Claim

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Employers must accommodate an employee's religion unless the employer proves that it would cause an "undue hardship" to do so. *See* 42 U.S.C. § 2000e(j). Religious discrimination claims under Title VII may be framed under a disparate treatment theory or a denial of religious accommodation theory. *Livingston v. City of N.Y.*, 563 F. Supp. 3d 201, 232 (S.D.N.Y. 2021).

##### 1. *Disparate Treatment Theory*

In bringing a disparate treatment claim, Moore must claim that she was treated "less favorably than a similarly situated employee outside [her] protected group." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). To state a claim under the disparate treatment theory, Moore must allege that: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). The burden to establish such a *prima facie* case is fairly "minimal." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) (quoting *Norton v. Sam's Club,* 145 F.3d 114, 118 (2d Cir. 1998)). If Moore has stated a *prima facie* case under the disparate treatment theory, the burden shifts to Montefiore to "articulate a legitimate, non-discriminatory reason for the challenged employment decision." *Livingston*, 563 F. Supp. 3d at 233 (citing *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004)). If Montefiore does so, the burden shifts back to Moore, who

must establish that Montefiore's stated reasons were merely pretextual. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

Moore satisfies the first three elements because: (1) religion is a protected class; (2) Moore has alleged that she was qualified for her position by virtue of her twenty years of experience; and (3) Moore suffered an adverse employment action when she was fired. As to the fourth requirement, Moore first claims that one colleague (who was vaccinated) was allowed to continue working despite contracting COVID-19. Doc. 27 at 2. Moore also alleges that a colleague (in a different role at a different Montefiore location) remained a Montefiore employee despite his failure to receive the Vaccine. *Id.* at 3.

The Court finds that Moore has not alleged any facts that give rise to an inference that she was discriminated against because of her religious beliefs. As a preliminary matter, one of her comparators *was* vaccinated, and thus is in no way similarly situated to her. As regards her second comparator, Moore does not identify what his religious denomination was, how his treatment compared to her own, or any details regarding whether he was otherwise "similarly situated" to her. *See Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 437 (S.D.N.Y. 2015) (dismissing a plaintiff's claim for failing to plausibly allege an inference of discrimination when she provided no facts supporting an indication that she was "similarly situated" to those to whom she compared herself); *see also Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016). Specifically, she does not provide any basis to determine whether he qualified as "personnel" under the Mandate.

Additionally, Moore's subjective belief that she was discriminated against is insufficient to establish a claim of discrimination. *Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 309–10 (E.D.N.Y. 2014), *aff'd*, 594 F. App'x 29 (2d Cir. 2015). Even if Moore had established a *prima facie* case, Moore has not alleged that Montefiore's stated reason for her termination (its obligation to comply with New York

law) was mere pretext. Thus, to the extent Moore attempted to make a Title VII claim under the disparate treatment theory, it is dismissed.

    2. *Failure to Accommodate Theory*

    a. *Title VII Does Not Entitle Moore to an Exemption from the DOH Mandate*

Montefiore argues that Title VII does not automatically entitle individuals to religious exemptions from the DOH Mandate. Doc. 23 at 13–16. Specifically, Montefiore argues that *We the Patriots I*, 17 F.4th 266, precludes Moore's position here. Montefiore cites to several cases in this Circuit where courts have relied on *We the Patriots I* to dismiss Title VII claims based on denials of religious exemption requests from the DOH Mandate. Doc. 23 at 13 (collecting cases). Accordingly, Montefiore asserts that it "was not obligated to violate its binding legal obligations under the DOH Mandate" to accommodate Moore's religious beliefs. *Id.* at 14. In other words, Montefiore contends that it could not allow Moore to remain in her position as a receptionist without receiving the Vaccine. *Id.* at 15.

In *We the Patriots I*, plaintiffs challenged § 2.61 of the DOH Mandate as unconstitutional under the Supremacy Clause because it obstructed the implementation of Title VII. 17 F.4th at 290. Although § 2.61 prohibits employers from making *exemptions* for employees with religious objections, the Second Circuit upheld § 2.61 because it allows employers to make *accommodations* for those employees by reassigning them to positions outside the definition of "personnel," and, therefore the Vaccine requirement. *Id.* at 292–93. The Second Circuit affirmed and clarified its decision in *We the Patriots II*. 17 F.4th at 370.

In opposition to Montefiore's motion, Moore does not address Montefiore's argument or challenge the reasoning of *We the Patriots I* or *II*. The Court finds that *We the Patriots* and its progeny establish that Title VII does not entitle Moore to a religious exemption from the DOH Mandate.

### b. Moore Stated a Prima Facie Claim

To state a *prima facie* claim of religious discrimination under a failure to accommodate theory, Moore must demonstrate that: (1) she has a bona fide religious belief that conflicted with an employment requirement; (2) she informed Montefiore about her beliefs; and (3) she was disciplined for failing to comply with the requirement. *See Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001).

Montefiore argues that Moore did not state a *prima facie* case because she never identified her religion and failed to allege how it conflicted with receiving the Vaccine. Doc. 23 at 12. However, the Court finds that Moore has met the minimal burden of setting forth a *prima facie* case that Montefiore failed to accommodate her religious belief under Title VII. Moore implicitly described herself as a Christian in the Religious Exemption Request Form by her citations to various Bible verses even if she did not explicitly say that she was a Christian. Doc. 24-1 at 3. Additionally, she informed Montefiore that her religious beliefs conflicted with its requirement that she receive the Vaccine. *Id.* Finally, she was terminated for failing to comply with the requirement. Doc. 27 at 2.

### c. Montefiore Would Suffer an Undue Hardship by Granting an Exemption

Having established a *prima facie* case, Montefiore must provide Moore with a reasonable accommodation for her religious beliefs, unless "doing so would cause the employer to suffer an undue hardship." *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (quoting *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002)). Case law makes clear, however, that if "the proposed accommodation threatens to compromise safety in the workplace, the employer's burden of establishing an undue burden is light indeed." *Kalsi v. N.Y.C. Transit Auth.*, 62 F. Supp. 2d 745, 758 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999).

Montefiore contends that Moore did not request to be transferred or reassigned but rather to remain employed as a receptionist while unvaccinated.[12] Doc. 23 at 15. As a receptionist, Moore greeted, screened, and provided information to patients' families and visitors. *Id.* at 10. Accordingly, she clearly met the DOH Mandate's definition of "personnel" because she could "expose other personnel, patients, or residents to the disease."[13] § 2.61(a)(2). Montefiore maintains that if it honored Moore's request to remain in her post while unvaccinated, it would be in violation of the New York rule. § 2.61(c). Thus, Montefiore concludes that accommodating Moore's request for a religious exemption subject it to legal liability (including the possible revocation of its operating license), which qualifies as an undue hardship. Doc. 23 at 17. Relatedly, Montefiore argues that if it granted Moore's request for an exemption, it would heighten the risk of exposure to Montefiore's patients, many of whom are immunocompromised or otherwise vulnerable to severe infection. *Id.* Such risk separately qualifies as an undue hardship. *Id.*

In opposition to Montefiore's motion, Moore argues that Montefiore's claim of undue hardship "remains unproven and unvalidated." Doc. 27 at 3. Moore highlights her continued adherence to the health guidelines, which included wearing a mask and advocating for barriers. *Id.* However, Moore does not dispute that if Montefiore continued to employ her in her then-current role as a receptionist, it would be exposing itself to legal liability and its patients to an increased risk of infection. *See generally*

---

[12] Although Montefiore asserts that Moore sought a blanket exemption from the Vaccine requirement, the Religious Exemption Request Form does not explain whether there were alternative avenues available to Moore to seek an accommodation besides submitting the form. Doc. 24-1 at 2–4. Additionally, it is unclear from Moore's complaint whether she sought an "exemption" or an "accommodation," as she uses both words to describe the relief she was seeking from Montefiore. Doc. 1 at 5.

[13] In opposition to Montefiore's motion, Moore does not dispute that she qualified as "personnel" subject to the Vaccine requirement. *See generally* Doc. 27. In any event, other courts in this Circuit have reached similar conclusions in evaluating employees with similar responsibilities. *Corrales v. Montefiore Med. Ctr.*, No. 22-cv-3219 (LAP), 2023 WL 2711415, at *7 (S.D.N.Y. Mar. 30, 2023) (finding that receptionists in executive offices who did not interact with patients are covered by § 2.61); *Andre-Rodney v. Hochul*, 618 F. Supp. 3d 72, 78 (N.D.N.Y. 2022) (finding that security assistants at hospitals are covered by § 2.61). The Court similarly finds that Moore is covered here.

Doc. 27; *see also Algarin v. NYC Health + Hosps. Corp.*, No. 22-cv-8340 (JLR), 2023 WL 4157164, at *8 (S.D.N.Y. June 23, 2023) (collecting cases from this Circuit where district courts have dismissed Title VII claims because violating § 2.61 would "create an undue hardship"); *Riley v. N.Y.C. Health & Hosps. Corp.*, No. 22-cv-2736 (JGK), 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023) ("Title VII cannot be used to require employers to break the law"). Accordingly, Montefiore has demonstrated that exempting Moore from the vaccination requirement would constitute an undue hardship. Thus, Moore has not—and cannot—hold Montefiore liable under Title VII for its failure to accommodate Moore's religious objections to receiving the Vaccine.

### B. Title VII Retaliation Claim

In her complaint, Moore also indicates an intention to hold Montefiore liable for its alleged retaliation against her. Doc. 1 at 5. To establish a *prima facie* case for retaliation under Title VII, Moore must demonstrate that: (1) she engaged in a protected activity; (2) Montefiore was aware of that activity; (3) she suffered an adverse action; and (4) "there was a causal connection between the protected activity and that adverse action." *See Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).

There is no dispute that Moore submitted a Religious Exemption Request Form and was fired, thereby meeting the second and third criteria for establishing a *prima facie* case. Additionally, even if the Court finds that Moore's submission of the Religious Exemption Request Form was protected activity, Montefiore urges the Court to dismiss her claim because she cannot establish a causal connection between submitting the form and her termination. Doc. 23 at 17. Instead, Montefiore maintains that Moore was fired because of her refusal to receive the Vaccine. *Id.* at 17–18.

Moore does not address her retaliation claim in opposition to Montefiore's motion. *See generally* Doc. 27. Thus, the Court may deem she abandoned her claim. *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the

claim." (citation omitted)); *McGriff v. Keyser*, No. 17-cv-7307 (NSR), 2019 WL 6033421, at *12 n.9 (S.D.N.Y. Nov. 13, 2019) ("It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims."). However, even if she had not abandoned her claim, she would not have been able to state a *prima facie* retaliation claim. If Moore did not submit the form but remained unvaccinated, Montefiore would have terminated her or face legal liability. Alternatively, if after submitting the form, Moore decided to receive the Vaccine prior to Montefiore's deadlines, she would not have been terminated, as explained in the letter she received. Doc. 24-2 at 2. Thus, Moore was terminated because she did not receive the Vaccine—not because she submitted the Religious Exemption Request Form. Therefore, Moore's retaliation claim must be dismissed because she cannot demonstrate that submitting the form was a "but-for cause of termination." *Serrano v. N.Y. State Dep't of Environ. Conserv.*, 714 F. App'x 90, 92 (Summary Order) (2d Cir. 2018).

### C.  Due Process Claim

In opposition to Montefiore's motion, Moore asserts that her employment was terminated "without due process" and "without due consideration." Doc. 27 at 1. Moore also contends that Montefiore's responses to the DOH Mandate were "mired in contradictions." *Id.* at 2. The Court addresses these allegations to the extent Moore intends to claim that Montefiore violated her due process rights.

Moore may not assert constitutional violations against Moore (a private entity) unless she demonstrates that her termination was "fairly attributable" to a state actor. *See e.g.*, *Barrows v. Becerra*, 24 F.4th 116, 135 (2d Cir. 2022). However, "[p]rivate hospitals . . . are generally not considered state actors." *Parker v. Blackerby*, 368 F. Supp. 3d 611, 624 (W.D.N.Y. 2019) (citing *Doe v. 201 Rosenberg*, 996 F. Supp. 343, 356 (S.D.N.Y. 1998)). Moore has not alleged any facts that demonstrate Montefiore is in any way controlled by the state. Indeed, other courts in this District have previously found

Montefiore to be a private entity—not a state actor. *Marte v. Montefiore Med. Ctr.*, No. 22-cv-3491 (CM), 2022 WL 7059182, at *5 (S.D.N.Y. Oct. 12, 2022); *Antwi v. Montefiore Med. Ctr.*, No. 14-cv-0840 (ER), 2014 WL 6481996, at *5 (S.D.N.Y. Nov. 18, 2014); *see also Jackson v. Ramirez*, No. 15-cv-0617 (GHW), 2016 WL 796854, at *9 (S.D.N.Y. Feb. 22, 2016) (finding a Montefiore employee is not a state employee). The Court similarly finds that Montefiore is a private entity and thus dismisses Moore's due process claim.

### D. Leave to Amend

Although Moore has not requested leave to amend the complaint, the Court has considered whether she should be given that opportunity. The Second Circuit has explained that "[a] *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court may deny leave to amend if any amendment would be futile. *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999). Futility may be found if "amendments would fail to cure prior deficiencies or state a claim under Rule 12(b)(6)." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

Montefiore urges the Court to deny Moore the opportunity to amend the complaint because, even pursuant to the liberal standard afforded *pro se* claimants, any amendment would be futile. Doc. 23 at 18. Montefiore argues that the deficiencies in Moore's complaint are substantive, rather than the result of "inartful pleading." *Id.* (quoting *Biswas v. Rouen*, 808 F. App'x 53, 55 (2d Cir. 2020)). Thus, Montefiore concludes that Moore has no possibility of asserting plausible claims, which warrants dismissal. *Id*.

Moore's Title VII discrimination claims will ultimately fail due to the undue hardship Montefiore would face by granting her exemption request.  *See Marte*, 2022 WL 7059182, at *7–8.  Additionally, no alteration to Moore's complaint will render Montefiore a state actor to revive her due process claim.  Thus, even under the liberal standard for amending pleadings provided for *pro se* litigants, the Court finds that it would be futile to allow Moore to amend her complaint.  Therefore, her claims will be dismissed, with prejudice.

### IV. CONCLUSION

For the reasons stated above, Montefiore's motion to dismiss is GRANTED, with prejudice.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 22, and close the case.

It is SO ORDERED.

Dated:   November 3, 2023
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.